424 A.2d 870

**COMMONWEALTH of Pennsylvania,**

v.

**Israel SANTIAGO, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 23, 1980.

Decided Jan. 27, 1981.

298

Neil E. Jokelson, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Nancy Wasser, Philadelphia, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This is an appeal from the order of the Court of Common Pleas of Philadelphia denying appellant's motion to quash indictments on double jeopardy grounds.[1]

Appellant, Israel Santiago, was tried for the second time on charges of murder, rape, indecent assault and criminal conspiracy.[2] This trial ended when the court, over defense objection, declared a mistrial after approximately thirty hours of jury deliberation. Appellant argues that the Commonwealth should be barred from proceeding with a third trial because the declaration of a mistrial over appellant's objection was not based upon manifest necessity and, therefore, retrial would violate his constitutional guarantee against double jeopardy. We conclude that the trial court did not abuse its discretion in declaring a mistrial for manifest necessity and remand for trial.

The jury deliberated from 4:15 to 6:00 p. m. on Monday, December 11, 1978, and from 10:00 a. m. to 12:30 p. m. on

1. We hear this appeal pursuant to *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977) in which a majority of the Court agreed that pre-trial orders denying double jeopardy claims are final, appealable orders. See also *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *Commonwealth v. Hogan*, 482 Pa. 333, 393 A.2d 1133 (1978); *Commonwealth v. Washington*, 481 Pa. 474, 393 A.2d 3 (1978); *Commonwealth v. Haefner*, 473 Pa. 154, 373 A.2d 1094 (1977).

2. Appellant's first trial resulted in a conviction of murder of the second degree, rape and conspiracy. This conviction was vacated after an evidentiary hearing established that appellant had been denied his right to effective assistance of trial counsel. *Commonwealth v. Santiago*, 479 Pa. 339, 338 A.2d 686 (1978).

December 12 before informing the court that it was dead-
locked. The court instructed the jury to continue its deliber-
ations. At 2:10 p. m. that same day the jury asked a court
officer to advise the court that it was ready to return a
verdict. However, the jury did not return to the courtroom
but instead instructed the court officer to inform the court
that the jury was not in agreement. The court then in-
structed the jury to continue its deliberations. The jury
retired for the night at 6:40 p. m. On both December 13 and
December 14, the jury deliberated from 10:00 a. m. to 5:00 p.
m. Then on Friday, December 15, at 9:30 a. m. one of the
jurors was reported ill from exhaustion. This juror was
discharged and, by agreement of counsel, deliberations con-
tinued with eleven jurors. At 3:00 p. m. that day, after
discussion with counsel and despite defense objection, the
court summoned the jury. The court inquired whether the
jury had reached a verdict and, if not, whether with more
time it could do so. The foreman answered that no verdict
had been reached and that "[w]e have gotten the same
verdict for the past few days without any change at all in
the last two days." The court then asked the jury to return
to the jury room to determine whether it was deadlocked.
Twenty-three minutes later the jury returned and the fol-
lowing colloquy ensued:

"THE COURT: Has the jury come to any decision?

JURY FOREMAN: It has, your Honor.

THE COURT: I see. Can you state what it is they have
agreed?

JURY FOREMAN: That the jury is deadlocked.

THE COURT: I see.

MR. JOKELSON: Your Honor, may I ask that the jury be
polled with respect to the question of . . .

THE COURT: What question do you suggest should be
asked?

MR. JOKELSON: Does each juror believe that in his or
her own mind that this jury is deadlocked.

THE COURT: All right. I'll ask the Court Crier to
conduct the poll of the jury, asking the question which

was suggested by Mr. Jokelson, do you believe that the jury is deadlocked.

COURT CRIER: Very well. Mr. Foreman, please be seated.

\* \* \* \* \* \*

(Whereupon, the jury was duly polled and all eleven answered in the affirmative to the above question.)

\* \* \* \* \* \*

MR. JOKELSON: Your Honor, for the record, I'd ask that the Court read to the jury the American Bar Association standards on jury deliberation and what their duties are.

THE COURT: And your request is denied, for the reasons that I've stated outside the presence of the jury.

THE COURT: Ladies and gentlemen of the jury: I just ask you all generally, do you all find that the jury is deadlocked and so say you all?

JURY AS ONE VOICE: Yes."

At this point the court stated that there was manifest necessity for a mistrial and sua sponte declared one.

██ It is well settled that when, without defense consent, a jury is discharged for failure to reach a verdict, retrial is permissible if the discharge was manifestly necessary. *Arizona v. Washington*, 434 U.S. 497, 509–10, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978); *Commonwealth v. Sullivan*, 484 Pa. 130, 133, 398 A.2d 978, 979 (1979); *Commonwealth v. Bartolomucci*, 468 Pa. 338, 345, 362 A.2d 234, 238 (1976). Appellant advances three arguments in support of his contention that the trial court erred in finding manifest necessity: (1) the court improperly summoned the jury to inquire whether it had reached a verdict; (2) the court improperly denied appellant's request for a jury charge pursuant to *Commonwealth v. Spencer*, 442 Pa. 328, 275 A.2d 299 (1971) prior to declaring a mistrial; (3) the court improperly considered the inconvenience to the jury which would be caused by deliberations and sequestration over an upcoming weekend. We are satisfied that none of the alleged errors constitutes an abuse of judicial discretion which will bar retrial.

## I. COURT—JURY COLLOQUY

We reject appellant's contention that a trial judge may not summon the jury and raise the issue of jury deadlock sua sponte. Such action cannot, as appellant argues, be regarded as inherently coercing the jury to declare itself deadlocked. See *United States ex rel. Webb v. Court of Common Pleas*, 516 F.2d 1034 (3d Cir. 1975); *Commonwealth v. Story*, 270 Pa.Super. 66, 410 A.2d 1251 (1980); *Commonwealth v. Kivlin*, 267 Pa.Super. 270, 406 A.2d 799 (1979). Nor was there any actual coercion employed here. When the court first summoned the jury it conducted the following simple and straightforward colloquy:

"THE COURT: Have you reached a verdict?

JURY FOREMAN: We have not, your Honor.

THE COURT: I see. If you were given more time for deliberation, in your opinion, do you feel that you could reach a verdict?

JURY FOREMAN: We have gotten the same verdict for the past two days without any change at all in the last two days.

THE COURT: I see. I don't want to conduct any further discussion with you but I will ask you and the other jurors to return to the jury room only for the purpose of determining whether you all are of the same opinion that the jury is deadlocked or not and then I'll ask you to come right back.

JURY FOREMAN: Yes, your Honor.

THE COURT: You can take as much time as you want to let us know whether the jury is deadlocked or not.

JURY FOREMAN: Yes, sir."

Although the colloquy specifically inquired as to whether the jury was deadlocked, it did not, as appellant argues, suggest how the jury should respond. After the jury returned and the foreman reported the jury to be deadlocked, the jurors were individually polled and also questioned as a whole. The jurors unequivocally stated that they were deadlocked, and the foreman's own statement indicates that the jury had been deadlocked for the previous two days. Nothing in the

record indicates that the court's action in summoning the jury compelled the jury to declare itself deadlocked. The trial court followed "preferable practice [which] demands that the trial court . . . ask each juror if he or she agrees that a hopeless deadlock which could not be resolved by further deliberations exists." *Commonwealth v. Bartolomucci*, 468 Pa. at 348 n.5, 362 A.2d at 239 n.5. Given the statements of the foreman and the responses of the individual jurors, the trial judge was justified in discharging the jury. See Standard 15–5.4(c) of the American Bar Association Standards Relating to the Administration of Criminal Justice, Trial by Jury (2d ed. Tent. Draft 1978) infra at 6, note 3.

## II. SPENCER JURY CHARGE

After the jurors individually stated that they were deadlocked, defense counsel requested a jury charge pursuant to the ABA Standards Relating to Trial by Jury which this Court commended in *Commonwealth v. Spencer*, 442 Pa. at 337–38, 275 A.2d at 304–05, as guidelines for courts to follow when juries are deadlocked.[3] The trial court refused de-

---

**3.** Standard 15–5.4 of the American Bar Association Standards Relating to the Administration of Criminal Justice, Trial by Jury (2d ed. Approved Draft 1978) provides:

"Standard 15–5.4. Length of deliberations; deadlocked jury

(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

(i) that in order to return a verdict, each juror must agree thereto:

(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(iii) that each juror must decide the case for himself or herself but only after an impartial consideration of the evidence with the other jurors;

(iv) that in the course of deliberations, a juror should not hesitate to reexamine his or her own views and change an opinion if the juror is convinced it is erroneous; and

(v) that no juror should surrender his or her honest conviction as to the weight or effect of the evidence solely because of the opinion of the other jurors, or for the mere purpose of returning a verdict.

(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in paragraph (a). The

fense counsel's request on the ground that a *Spencer* charge would be unduly coercive at that point in the jury's deliberations and that *Spencer* did not require, but only advised, that these standards be used.

■ Whether to give a *Spencer* charge is a matter for the exercise of the trial court's sound discretion. On this record we do not find that discretion to have been abused. The trial court may properly consider whether an instruction of further deliberations might have a coercive effect upon the verdict. See *Arizona v. Washington*, supra; *Arnold v. McCarthy*, 566 F.2d 1377 (9th Cir. 1978). Here, the trial court concluded that

> "at this point of deliberations, [a *Spencer* charge] could be interpreted as some kind of a mandate or coercion on the part of the jury and I may be of a minority view but I don't think under any circumstances should the Judge bring the jury in and give them a modified mild Allen charge [i. e., *Spencer* charge] or any other kind."

The court also stated:

> "I have seriously considered them [the *Spencer* guidelines] and I'm familiar with that and I have seriously considered them and I have considered some form of mild coercion which after thirty hours of deliberation might be interpreted as a very strong coercion, on the part of the Court."

We disapprove any implication by the trial court that a *Spencer* charge should never be given. However, where the court reasonably finds, as it did here, that such a charge would be unduly coercive, there is no abuse of discretion in refusing to give a *Spencer* instruction, even when requested by defense counsel.

> court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.
> (c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement."

## III. JURY INCONVENIENCE

■ Finally, appellant argues that the court, in determining that a mistrial was manifestly necessary, improperly considered the inconvenience to the jury of continued service. This contention is meritless. The record reveals two occasions on which the court addressed the jury's inconvenience: (1) when *informing* counsel of its decision to summon the jury to inquire into the progress of the jury's deliberations, and (2) when thanking the jury for its services after a mistrial had been declared. Both sets of remarks indicate a concern for the jury and appreciation for its service, but they do not indicate that the judge considered the jury's convenience in determining whether there was manifest necessity for a mistrial. Although we agree with appellant that it is not permissible to consider jury convenience in deciding whether manifest necessity for a mistrial exists, our reading of the record satisfies us that the court based its declaration of a mistrial on the jury's inability to reach a verdict, not on the jury's convenience. See *Commonwealth v. Kivlin*, supra (deadlock jury's alleged motivation to avoid weekend deliberations speculative).[4]

Accordingly, the order of the court of common pleas is affirmed and the case remanded for trial.

4. On this pre-trial appeal, we will not consider appellant's non-double-jeopardy claim that his right to a fair trial was violated by the destruction by the Philadelphia Police Department of items of clothing taken from the alleged rape victim. See *Commonwealth v. Washington*, 481 Pa. 474, 393 A.2d 3 (1978).