J-S80041-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| BRIAN HOOK, | : | |
| | : | |
| Appellant | : | No. 857 EDA 2017 |

Appeal from the PCRA Order February 17, 2017
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0013429-2009

BEFORE: BOWES, J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED FEBRUARY 27, 2018**

Brian Hook ("Hook") appeals from the Order dismissing his first
Petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We
affirm.

In its Opinion, the PCRA court set forth the factual and procedural
background of this case, which we adopt for the purpose of this appeal. *See*
PCRA Court Opinion, 5/26/17, at 1-5.

On appeal, Hook raises the following issue for our review: "Whether
trial counsel was ineffective for not objecting to the trial court's instructions
after jurors had informed the trial court they were 'solidly' deadlocked at 6-

---

[1] *See* 42 Pa.C.S.A. §§ 9541-9546.

6[,] and for not requesting the trial court to issue a **Spencer**[2]

instruction[?]"[3] Brief for Appellant at 3 (capitalization omitted, footnote

---

[2] **Commonwealth v. Spencer**, 275 A.2d 299 (Pa. 1971).

[3] A **Spencer** instruction is a non-coercive charge given to a deadlocked jury which informs the jury of the following:

> (i) that in order to return a verdict, each juror must agree thereto; (ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment; (iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors; (iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and (v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

**Commonwealth v. Greer**, 951 A.2d 346, 387 (Pa. 2008) (quoting **Spencer**, 275 A.2d at 304 n.7).

J-S80041-17

added).[4]

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

**Commonwealth v. Ford**, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

Hook contends that, on the afternoon of December 9, 2010, during his criminal trial, the jury indicated to the trial court that it was deadlocked at 6-

---

[4] The Commonwealth contends that Hook waived the issue by failing to raise it in his court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal. **See** Commonwealth's Brief at 4; **see also** Pa.R.A.P. 1925(b)(3)(vii) (providing that "issues not included in the Statement … are waived."). While Hook's **Spencer** claim was framed in his Concise Statement solely as trial court error, without any reference to trial counsel's ineffectiveness, Hook raised his ineffectiveness claim before the PCRA court, and the PCRA court addressed it in its Pa.R.A.P. 1925(a) Opinion. Thus, we decline to find waiver on this basis. **See Commonwealth v. Smith**, 955 A.2d 391, 393 (Pa. Super. 2008) (declining to find waiver, despite a vague concise statement, where the trial court filed an opinion which meaningfully addressed the Commonwealth's arguments); **see also Commonwealth v. Laboy**, 936 A.2d 1058, 1060 (Pa. 2007) (stating that this Court can review an issue, despite a vague Rule 1925(b) statement, where trial court readily apprehends appellant's claim and addresses it in substantial detail.).

6.    Brief for Appellant at 8, 16.   Hook states that the trial court then instructed the jury as follows:

> Well, what I am going to do at this time is to send you home to kind of think about what your fellow jurors have had to say[,] and to mull over the facts and circumstances[,] and have you come back at nine o'clock tomorrow morning[,] when you will resume deliberating.   And[,] if after coming back and having slept on it[,] you're still at 6-6 or not close to anything, let me know and I will give you an additional charge at that time.

*Id*. at 8-9, 16-17 (citing N.T., 12/9/10, at 140).   Hook indicates that the trial court further instructed the jurors that "you will not be permitted to resume your deliberations until [tomorrow, when] you have been specifically instructed to do so by the [c]ourt …."   Brief for Appellant at 17 (citing N.T., 12/9/10, at 142).   Hook further indicates that, after the jury had been excused on the afternoon of December 9, 2010, the trial court stated to defense counsel and the prosecutor, "I don't know if counsel wants the *Spencer* charge given.   Decide both of you in the morning, if they are still deadlocked."   Brief for Appellant at 9-10, 20 (quoting N.T., 12/9/10, at 142).

Hook claims that the trial court's instructions to the jury, "were internally inconsistent[,] and it is reasonably likely the inconsistency *confused* the jurors into thinking they were permitted to privately deliberate about the case while at home on the night of December 9th."   Brief for Appellant at 18 (emphasis in original); *see also id*. at 10 (wherein Hook claims that "[t]here is a reasonable likelihood that jurors interpreted the trial court's late[-]day instructions on December 9th to permit, if not require,

them to continue their deliberations at home – without input from their fellow jurors."). Hook asserts that his counsel was ineffective for failing to object to the instructions provided by the trial court, and for failing to request a *Spencer* charge before the trial court dismissed the jurors for the evening. *Id*. at 9, 11, 19. Hook also claims that his trial counsel was ineffective for failing to request the trial court to instruct the jurors to take an initial vote on the morning of December 10, 2010, to determine if they were still deadlocked and, if so, to issue a *Spencer* charge at that time. *Id*. at 10. According to Hook, the jury began deliberating at 9:00 a.m. on the morning of December 10, 2010, and reached a unanimous verdict of guilty by 11:39 a.m. *Id*. Hook argues that

> [i]t is reasonably likely that the *combination* of the trial court's inappropriate "mull it over" instruction and trial counsel's failure to request an instruction informing jurors not to surrender their honest convictions[,] played a substantial role in convincing the six "not guilty" jurors to flip their votes to guilty in such a short period of time on December 10th.

*Id*. (emphasis in original); *see also id*. at 22-23. Hook asserts that, had his counsel objected to the trial court's instruction and requested a *Spencer* instruction before the jurors were excused on December 9, 2010, there is a reasonable probability that the outcome of his trial would have been different, "either resulting in an acquittal or mistrial based on the jury's inability to render a unanimous verdict." *Id*. at 11-12, 23.

To succeed on an ineffectiveness claim, appellant must demonstrate by the preponderance of the evidence that

(1) [the] underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Ali*, 10 A.3d 282, 291 (Pa. 2010). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010). Counsel is presumed to be effective and the burden is on the appellant to prove otherwise. *Commonwealth v. Hanible*, 30 A.3d 426, 439 (Pa. 2011).

In its Opinion, the PCRA court addressed Hook's issue, set forth the relevant law and concluded that the issue lacks merit because, *inter alia*, the trial court had instructed the jury "using substantially the same language" as included within a *Spencer* instruction. *See* PCRA Court Opinion, 5/26/17, at 8-10. Specifically, the trial court instructed the jury as follows prior to dismissing them on the afternoon of December 9, 2010:

> Review the evidence impartially with the other jurors and do not hesitate to reexamine your own views and change your opinion if the others convince you that you made a mistake. But[,] each of you must finally decide the case for himself or herself. Try to come to a unanimous conclusion if you can do that honestly and with self-respect.

*See id*. at 9 (citing N.T., 12/9/10, at 122-23). On this basis, the PCRA court determined that Hook's counsel had no basis to object to the trial court's instructions, and was not ineffective for failing to do so. *See id*. at 9, 10. As we discern no abuse of discretion or error of law, we affirm the PCRA court's ruling. *See id*.; *see also Commonwealth v. Jones*, 912 A.2d 268,

278 (Pa. 2006) (holding that counsel cannot be found ineffective for failing to challenge legally proper jury instructions).

     Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/27/18

PHILADELPHIA COURT OF COMMON PLEAS
CRIMINAL TRIAL DIVISION

**FILED**

**MAY 2 6 2017**

Office of Judicial Records
Appeals/Post Trial

COMMONWEALTH             :

                               :         CP-51-CR-0013429-2009

      v.                    :

BRIAN HOOK             :         Superior Court No.
                                     857 EDA 2017

Sarmina, J.              :

May 26, 2017

## OPINION

### PROCEDURAL HISTORY:

On December 10, 2010, following a jury trial[1] before this Court, Brian Hook (hereafter, petitioner) was found guilty of murder of the first degree (H-1) and possessing instruments of crime (PIC)(M-1).[2] On that same date, petitioner was sentenced to the mandatory term[3] of life imprisonment.[4] Petitioner filed post-sentence motions on December 14, 2010, and filed supplemental post-sentence motions[5] on February 8, 2011 and February 10, 2011. This Court denied petitioner's post-sentence motions on April 13, 2011. Petitioner filed a timely notice of

CP-51-CR-0013429-2009 Comm. v. Hook, Brian
Opinion



7954038391

---

[1] At trial, petitioner was represented by Harvey Yanks, Esquire.

[2] 18 Pa.C.S. §§ 2502(a), and 907(a), respectively.

[3] 18 Pa.C.S. § 1102(a).

[4] As to the charge of PIC, petitioner was sentenced to a concurrent term of not less than 1 year nor more than 2 years imprisonment. Notes of Testimony (N.T.) 12/10/10 at 17.

[5] On December 21, 2010, this Court granted petitioner's appellate counsel twenty days from the date that petitioner's trial transcript became available in which to file supplemental post-sentence motions. John Belli, Esquire, represented petitioner in post-sentence motions and on direct appeal.

1

appeal on May 5, 2011. On January 9, 2012, Superior Court affirmed petitioner's judgment of sentence, and, on July 9, 2012, our Supreme Court denied petitioner's allowance of appeal.[6]

On May 28, 2013, petitioner filed a timely *pro se* Post-Conviction Relief Act (PCRA)[7] petition, and submitted a *pro se* "Amended PCRA Petition with Memorandum of Law" on September 30, 2013. Counsel was appointed,[8] entering his appearance on February 20, 2014. On April 12, 2016, petitioner requested to proceed *pro se.*[9] On July 25, 2016, following a Grazier[10] hearing before this Court, petitioner was permitted to proceed *pro se.* On August 15, 2016, petitioner filed an amended *pro se* PCRA petition. On November 2, 2016, the Commonwealth filed a Motion to Dismiss the petition. On January 6, 2017, having reviewed the pleadings and determined that petitioner's claims lacked merit, this Court sent petitioner notice of its intent to deny and dismiss his PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907 (907 Notice). On January 26, 2017, petitioner filed a response to the 907 Notice. Finding that petitioner's response to the 907 Notice raised no new claims and asserted no additional facts to supplement the claims already raised so as to warrant relief, this Court dismissed petitioner's PCRA petition on February 17, 2017. This timely appeal followed.

**FACTS:**

On August 7, 2009, at approximately 11:35 p.m., Orlando Morrison (decedent) was fatally shot inside his place of employment, Cousin Danny's Lounge, an exotic bar located at 322 South 52nd Street in Philadelphia. Notes of Testimony (N.T.) 12/7/2010 at 85, 60; 12/8/2010 at 43.

---

[6] Commonwealth v. Hook, No. 1322 EDA 2011, slip op. (Pa.Super. Jan. 9, 2012) (memorandum opinion), allocatur denied, No. 34 EAL 2012, slip op. (Pa., Jul. 9, 2012).

[7] 42 Pa.C.S. §§ 9541-9546.

[8] Dennis Turner, Esquire, was appointed to represent petitioner on collateral attack.

[9] This matter was assigned to this Court on May 25, 2016. On June 24, 2016, pursuant to this Court's Order on June 7, 2016, PCRA counsel appeared to address what, if anything, he had done for this matter since entering his appearance.

[10] Commonwealth v. Grazier, 713 A.2d 81 (Pa. 1998).

2

Between the hours of 3:00 p.m. and 4:00 p.m. on August 7, 2009, the decedent went to get a pedicure at a nail salon located at 61st Street and Woodland Avenue, accompanied by his girlfriend, Tiffany Tadlock, Ms. Tadlock's sister, Bayyinah Debose, a woman named Shoshanah, and two little girls. N.T. 12/8/2010 at 10, 13, 118. While he was there, Kina Moore, the sister of the decedent's daughter's mother, Iasia Moore, came into the nail salon with the decedent's daughter, Anyea, age seven.[11] N.T. 12/8/2010 at 38, 12. Upon seeing the decedent in the company of several women, Kina Moore called her sister, Iasia, complaining that the decedent "was there with five other females and that he was getting their nails done and he needs to get his daughter's nails done." N.T. 12/8/2010 at 41. Feeling "bad vibes," Ms. Tadlock decided to leave the nail salon, and went home with Ms. Debose to the house they shared. N.T. 12/8/2010 at 15-16. Despite the decedent's ready agreement to pay for his daughter to have her nails done, he and Kina continued to argue, and the fight carried over into the street outside the nail salon. N.T. 12/8/2010 at 15, 41, 155. The argument became physical, as the decedent bent Kina's fingers back and grabbed her by the collar. N.T. 12/8/2010 at 42, 46. Kina grabbed him back, ripping the collar of his t-shirt. N.T. 12/8/2010 at 42, 46, 116.

Prompted by a phone call that Ms. Tadlock received, Ms. Debose called the decedent. N.T. 12/8/2010 at 17. When the decedent picked up the phone, Ms. Debose heard him arguing with Kina. N.T. 12/8/2010 at 17-18. Kina yelled, "I'm gonna get you touched," to which the decedent responded, "[p]lay pussy, get fucked. You know where I work at." Id. at 115. Iasia Moore, who was on the phone with Kina, heard the same exchange: Kina telling the decedent she was going to "get him touched," and the decedent responding that she [Kina] knew where he worked." Id. at 47. When Iasia and Kina spoke later that evening, Kina told Iasia that the decedent had also told her "to

---

[11] Kina Moore was petitioner's girlfriend, and the two of them had been living together for approximately two and a half years as of August 7, 2009. N.T. 12/8/2010 at 39, 157.

3

go get [her] boyfriend, that he knows where he works." Id. at 48. Iasia testified at trial that she had heard the phrase before, and was familiar with it, and that her understanding of the phrase "get someone touched" was that it means "to have something done to someone." Id. at 47, 48. Ms. Debose testified that "get someone touched" "…could mean a whole lot of things. But on the street when certain people say that, that means they going to get you killed." N.T. 12/8/2010 at 122. In her statement to detectives, she explained that the phrase means, "I'm gonna get someone to get you or someone to beat you up[,] it could mean a lot of things. It could mean I could get someone to kill you, or I can get you beat up." Id. at 121.

After his argument with Kina, the decedent returned to Ms. Tadlock's and Ms. Debose's house, changed his clothes, and went to work. N.T. 12/8/2010 at 124-25. Around 11:00 p.m., Tameka Beverly arrived at Cousin Danny's Lounge with her friend, Syreeta Delgado; the two women were there to pick up a girlfriend, who was bartending at the lounge. N.T. 12/7/2010 at 81-83, 106. When they arrived, three men were standing outside the lounge, one of whom was the decedent, who proceeded to follow the two women inside. Id. at 82-83. Because their girlfriend was not yet finished with her shift, Ms. Beverly and Ms. Delgado waited at the bar, and Ms. Delgado and the decedent struck up a conversation. Id. at 83-85.

At 11:30 p.m., Jeffrey Gibson, standing outside the lounge, saw petitioner walk into the lounge.[12, 13] N.T. 12/8/2010 at 63-64. Inside the lounge, Ms. Beverly saw petitioner come partially through the inner door,[14, 15] and fire three shots at the decedent, who was standing in front of the

---

[12] Mr. Gibson had come to the bar with a female acquaintance, who had gone into Cousin Danny's Lounge to purchase marijuana. N.T. 12/8/2010 at 63-64. Mr. Gibson was waiting outside, watching his cousin's bike while the cousin was inside the Lounge. Id.

[13] Mr. Gibson later identified petitioner in a police photo array. N.T. 12/8/2010 at 73-76.

[14] Cousin Danny's Lounge had an interior door, separated from the front door by a small vestibule. N.T. 12/7/2010 at 151-52. The interior door opened outward, into the vestibule. Id. at 158.

[15] Ms. Beverly later identified petitioner in a police photo array. At first look, she pointed out two men that looked familiar, but upon taking a second look, she definitively identified petitioner. N.T. 12/7/2010 at 93-95.

4

door, still talking to her and to Ms. Delgado. N.T. 12/7/2010 at 86, 88. Petitioner was wearing a brown hoody, with the hood up, the front of which only covered his hairline, leaving his whole face exposed.[16] N.T. 12/8/2010 at 6; 12/7/2010 at 89-90. Petitioner then left the Lounge, tucking his gun[17] into his pants as he walked out, and walked towards Pine Street. N.T. 12/7/2010 at 65. As he got to Pine Street, police sirens sounded, and petitioner began to run. Id..

Philadelphia Police Officers Michelle Dennard-Sherard and Elaine Thomas were at a car stop at 52nd and Spruce Streets, less than half a block from Cousin Danny's Lounge, when they heard three gunshots. N.T. 12/7/2010 at 60-61, 12/8/2010 at 128. The decedent had been shot three times; all three bullets were recovered by the Assistant Medical Examiner from inside the decedent's body. N.T. 12/8/2010 at 176-79.

Philadelphia Crime Scene Investigator William Whitehouse recovered three fired cartridge casings (FCCs) from the floor inside the vestibule of Cousin Danny's Lounge. N.T. 12/7/2010 at 145, 147. The Firearms Identification Unit found that all three FCCs were from the same Glock firearm, a semiautomatic weapon. Id. at 176-81.

## LEGAL ANALYSIS:

Petitioner raises the following issues on appeal:[18]

1. The PCRA court erred in violation of the Supremacy Clause of the United States Constitution where it denied relief on petitioner's claim that the Commonwealth and the trial court was without authority to sentence petitioner to life imprisonment without first conducting a penalty hearing.

---

[16] Ms. Beverly testified that petitioner was standing under a light, which was turned on, and which was located at the top of the inner doorway. N.T. 12/7/2010 at 88. Mr. Gibson testified that there were lights outside the lounge, also turned on. N.T. 12/8/2010 at 67.

[17] Mr. Gibson testified that he recognized the gun as being a semi-automatic. N.T. 12/8/2010 at 67.

[18] These claims have been renumbered and rephrased for ease of disposition.

5

2. The PCRA court erred in violation of the Supremacy Clause of the United States Constitution where it denied relief on petitioner's claim that the trial court issued a "deficient anti-deadlock instruction" to the jury.

Initially, with respect to both issues, this Court notes that, while petitioner raised *variations* of these claims in his PCRA petition, only on appeal has petitioner characterized either claim as an assertion that the trial court erred in conflict with federal constitutional law, therefore implicating the Supremacy Clause of the United States Constitution.[19] With respect to petitioner's first issue, petitioner claimed ineffective assistance of counsel for trial counsel's failure to object to the Court's authority to sentence him to life imprisonment without first conducting a penalty hearing, which petitioner claimed was in violation of 42 Pa.C.S. § 9711(a)(1). With respect to petitioner's second issue, petitioner alleged both that the trial court erred when it gave a "deficient anti-deadlock instruction" ("Spencer[20] charge") and that trial counsel was ineffective for failing to raise an objection to the Court's alleged omission of language in that instruction.

"Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "In order to preserve an issue for review, a party must make a timely and specific objection." Commonwealth v. Duffy, 832 A.2d 1132, 1136 (Pa.Super. 2003), *citing* Commonwealth v. Brown, 701 A.2d 252, 254 (Pa.Super. 1997). Moreover, "[a]n appellant may not raise a new *theory* for an objection made [in the lower court] on his appeal." Id., *citing* Commonwealth v. Pearson, 685 A.2d 551, 555 (Pa.Super. 1996) (emphasis added). "[B]elated attacks upon what happened at trial are better suited for consideration under a different rubric, such as ineffective assistance of counsel, where the proper focus is on the reasons counsel failed to raise an issue which was never brought to the trial judge's attention at a time when remedial measures might have been undertaken." Commonwealth v. Watkins, 843 A.2d 1203, 1219 (Pa. 2003). This

---

[19] U.S. Const. art. VI, cl. 2.

[20] Commonwealth v. Spencer, 275 A.2d 299 (Pa. 1971).

6

Court will not address whether petitioner's new theories on appeal, which ground his claims in the Supremacy Clause rather than asserting ineffective assistance of counsel and trial court error in applying the statutory law of this Commonwealth, result in waiver of those claims. That is a determination for Superior Court. In *lieu* of attempting to anticipate the Supremacy Clause arguments which petitioner intends to raise in this appeal, this Court will instead discuss petitioner's claims, and this Court's basis for finding that they were meritless, as they were raised in petitioner's *pro se* filings.

## 1. The Legality of Petitioner's Sentence of Life Without Parole

Petitioner's amended petition claimed that counsel was ineffective for failing to object that this Court lacked the authority to sentence petitioner to life imprisonment without first conducting a penalty hearing. Amended Petition, 9/30/13, at 10-15. In support, petitioner cited to 42 Pa.C.S. § 9711(a)(1), which provides for a separate sentencing hearing in which the jury determines whether to impose a sentence of death or life imprisonment following a verdict of murder of the first degree. Petitioner apparently was asserting that, in the absence of the jury deciding between a sentence of death or life imprisonment, a decision that was not before the jury, petitioner could not receive a life sentence.[21] This claim lacked merit.

The law of this Commonwealth provides that, in a capital case, a person who has been convicted of murder of the first degree "shall be sentenced to death or to a term of life imprisonment in accordance with 42 Pa.C.S. § 9711." 18 Pa.C.S. § 1102(a)(1). However, the sentencing procedure set forth in § 9711 *only* applies where the Commonwealth has elected to seek the death penalty;

---

[21] Petitioner argued at length that, because § 9711 does not explicitly provide the procedures for sentencing defendants where the Commonwealth does not pursue the death penalty, it is illegal for a court to impose a mandatory sentence of life imprisonment for those found guilty of murder of the first degree where a penalty phase is unnecessary because the Commonwealth has not pursued the death penalty. While this Court finds that petitioner has raised a valid point that the statute could have been written with more clarity to account for this circumstance, it nonetheless does not entitle petitioner to relief. See 1 Pa.C.S. § 1922(1) (providing that, in ascertaining legislative intent in the enactment and application of a statute, Pennsylvania courts are to presume that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable).

7

where the Commonwealth does not file a notice of aggravating circumstances, alleged at the time of arraignment, there are no aggravating or mitigating circumstances for the fact finder to weigh, and, upon conviction, a defendant is to be sentenced to the mandatory sentence of life imprisonment under § 1102(a)(1). See Commonwealth v. Buck, 709 A.2d 892, 896 (Pa. 1998) (finding that, because the Commonwealth is required to file a notice of aggravating circumstances alleged at the time of arraignment, the Commonwealth is required to disclose pre-trial whether it will seek the death penalty). In petitioner's trial, the Commonwealth did not seek the death penalty. N.T. 12/6/10 at 10 (wherein the Court explains to the jury pool that "This case does not involve the death penalty."). Petitioner was thus required to be sentenced to the mandatory penalty of life imprisonment as provided in § 1102. Therefore, petitioner's claim lacked merit, and it failed.

## 2. **Spencer** Charge

Petitioner's supplemental amended petition claimed that this Court instructed the jury with a "deficient" Spencer charge and that trial counsel was ineffective for failing to object to allegedly omitted language in that instruction. Supplemental Amended Petition, 8/15/16, at 3. Because this Court never gave an instruction to the jury specifically addressing the resolution of any impasse in deliberations, and this Court properly instructed the jury that jurors should only agree with other jurors on the basis of honest conviction, this claim failed.

In Commonwealth v. Spencer, 275 A.2d 299 (Pa. 1971), our Supreme Court addressed interaction with deadlocked juries and prohibited the use of jury charges promulgated by Allen v. United States, 164 U.S. 492 (1896) (suggesting that a dissenting juror should "consider whether his doubt is a reasonable one" if it did not persuade other jurors in the jury). Instead, Spencer provided that courts should look to the guidelines of the American Bar Association ("ABA") governing jury deadlock. Spencer, 275 A.2d at 338. The relevant scope and standard of review for a claim involving a court's instructions to a deadlocked jury is for an abuse of discretion. Commonwealth v.

8

Santiago, 424 A.2d 870 (Pa. 1981). An abuse of discretion regarding instructions to a deadlocked jury will be found where the jury verdict is the product of coercion or fatigue. Commonwealth v. Greer, 951 A.2d 346, 354-55 (Pa. 2008).

Petitioner claimed that this Court's jury charge was defective for omitting "an admonition that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict." Supplemental Amended Petition, 8/15/16, at 3. However, in its charge to the jury prior to excusing the jury to deliberate, this Court made that point to the jury using substantially the same language:

> THE COURT: Review the evidence impartially with the other jurors and do not hesitate to reexamine your own views and change your opinion if the others convince you that you made a mistake. But each of you must finally decide the case for himself or herself. Try to come to a unanimous conclusion if you can do that honestly and with self-respect.

N.T. 12/9/10, at 122-23.

As this Court made the point that jurors should only agree on the basis of honest conviction, there were no arguable grounds for counsel to object. Commonwealth v. Brown, 911 A.2d 576, 583 (Pa.Super. 2006), *quoting* Commonwealth v. Thomas, 904 A.2d 964, 970 (Pa.Super. 2006) ("A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions."). Beyond this initial charge, the Court gave no Spencer instruction.

On December 9, 2010, at approximately 3:25 PM at the end of the first day of deliberations, the Court received a note from the jury foreperson indicating that the jury was unable to reach a unanimous decision. N.T. 12/9/10 at 139-140 ("THE COURT: I received from you the note: "We are solidly 6-6. What now?""). This Court elected to send the jurors home, to resume deliberations the following day, and advised the jurors that, if they remained deadlocked the following morning, they should let the Court know so that the jury could be given additional instructions. Id. at 140.

9

The Court admonished the jurors not to discuss the case with anyone, including fellow jurors, in any fashion or to conduct any individual investigation of the facts, and that they would only resume deliberations following specific instructions by the Court the next day. Id. at 141-42. After the jury was excused, the Court addressed counsel: "I don't know if counsel wants the Spencer charge given. Decide both of you in the morning, if they are still deadlocked." Id. The record for the next day begins with the jury announcing its unanimous verdict. N.T. 12/10/10, at 3-4. As, under these circumstances, there was no need for a Spencer charge, this Court did not give one. Further, as this Court's initial instruction to the jury made the point that jurors should only agree with each other according to their honest convictions, trial counsel had no basis to object. Therefore, trial counsel was not ineffective, this Court did not err in its charge to the jury, and this claim failed.

For the foregoing reasons, petitioner was not entitled to relief under the PCRA and the Court did not err in dismissing the petition. Accordingly, the Court's dismissal of the petition should be affirmed.

BY THE COURT:

M. TERESA SARMINA,                J.

10