J-S46009-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NYIEKA DELORES SPEER | : | |
| | : | |
| Appellant | : | No. 997 WDA 2025 |

Appeal from the PCRA Order Entered August 6, 2025
In the Court of Common Pleas of Washington County Criminal Division at
No(s):  CP-63-CR-0000314-2020

BEFORE:  BOWES, J., NICHOLS, J., and KING, J.

MEMORANDUM BY BOWES, J.:                    **FILED: APRIL 13, 2026**

Nyieka Delores Speer appeals from the order denying her petition filed pursuant to the Post Conviction Relief Act ("PCRA").  We affirm.

Briefly, this matter arises from the overdose death of Sara Jones on April 12, 2019.  Appellant was arrested in connection therewith and charged with drug delivery resulting in death ("DDRD"), criminal use of a communication facility, and the manufacture, delivery, or possession of a controlled substance with intent to deliver.  The matter proceeded to a jury trial, wherein, *inter alia*, the victim's husband, Branden Jones, and Pennsylvania State Police ("PSP") Trooper Brian Rousseau, testified.

Mr. Jones explained to the jury that he and the victim regularly purchased heroin exclusively from Appellant at her residence in Washington County.  The drugs were either packaged in white baggies with a Spiderman

stamp, or plain baby blue baggies. Two days prior to the victim's overdose, he and Ms. Jones purchased heroin from Appellant, which was contained within baby blue baggies. When Mr. Jones discovered the victim deceased on their bathroom floor, he found open baby blue baggies of heroin in her purse.

Mr. Jones was initially reluctant to provide officers with information surrounding Ms. Jones's overdose, but the next day he requested an interview with PSP Trooper Terrance Crowley, who investigated this matter. Trooper Rousseau, who was assisting in the investigation, also attended. Mr. Jones informed the troopers that he and Ms. Jones had purchased drugs exclusively from Appellant between February 2019 and April 2019, and provided them with photographs and the address of her Washington County residence where the exchanges took place. During that interview, Trooper Crowley explained to Mr. Jones that he had become aware of Appellant's address through the investigation of this matter, including from Trooper Rousseau's research. When Trooper Rousseau took the stand, he attested that he had told Trooper Crowley that he "was familiar with [Appellant], her address[,] and her phone number[.]" N.T. Jury Trial Vol. I, 7/19/20, at 177.

At the conclusion of trial, the jury convicted Appellant of all counts, and the court sentenced her to seven and one-half to fifteen years in prison. Appellant appealed, and we affirmed her judgment of sentence. Relevantly,

she argued that the trial court erred in refusing to give an **Allen**[1] charge to the deliberating jury. **See Commonwealth v. Speer**, 313 A.3d 157, 2024 WL 48293 (Pa.Super. 2024) (non-precedential decision). In ruling upon this issue, we explained:

> After the close of evidence, and approximately ninety minutes into deliberations, the jury submitted a question asking what to do if the jurors were unanimous as to all charges except one. Following a brief discussion with the attorneys wherein the court stated that it was not yet appropriate to give an **Allen**[1] charge, the court ultimately instructed the jury as follows: "I received your question. I cannot give you a specific answer on that question. All that I can tell you is to continue to deliberate." The court went on to direct the jurors to "[g]o through each witness, all the information, and all the testimony, all the evidence, your recollection of that evidence, each element of each crime, and see where you are going to be." Critically, Appellant did not object to this instruction.
>
> _____
> [1.] Neither the trial court nor the parties discussed on the record the specifics of what an **Allen** charge is; however, we understand the reference as a jury instruction that "directs jurors to reconsider their views, and particularly focuses upon jurors in the minority, urging them to reconsider in light of the fact that the majority is otherwise inclined." **Commonwealth v. Greer**, 951 A.2d 346, 352 n.4 (Pa. 2008) (discussing **Allen**[).].

**Id**. at *1-2 (cleaned up). A short time later, the jury found Appellant guilty of all charges. Ultimately, based on trial counsel's failure to object, we concluded that this issue was waived.

Appellant thereafter timely filed the underlying PCRA petition with the assistance of court-appointed counsel, asserting that trial counsel was

_____
[1] **Allen v. United States**, 164 U.S. 492 (1896).

ineffective for neglecting to: (1) request that the jury be instructed as to DDRD that the drugs must have been delivered within the Commonwealth; (2) move for a mistrial when Trooper Rousseau stated that he was familiar with Appellant; and (3) object to the court's decision not to issue an *Allen* charge, resulting in waiver of the issue on appeal. *See* PCRA Petition, 12/10/24, at ¶ 11.

The PCRA court scheduled an evidentiary hearing, at which trial counsel, Mark Adams, Esquire, testified. He first explained that he did not request a jury instruction for DDRD as to the prosecution's burden to prove that Appellant delivered drugs to the victim within the Commonwealth because there was no question that all drug transactions took place within Washington County. *See* N.T. PCRA Hearing, 5/2/25, at 10-11. Additionally, Attorney Adams did not believe a mistrial was warranted based upon Trooper Rousseau's attestation that he was familiar with Appellant since it had been agreed upon before trial that no evidence would be introduced regarding Appellant's previous criminal activity, and it was clear that the trooper became familiar with Appellant's address and phone number through his investigation of this case. *Id*. at 17, 22, 28-29. Finally, he explained that it was a strategic decision not to request an *Allen* charge where he did not want to coerce the jury into a conviction, and wanted to raise this challenge only if Appellant was found guilty. *Id*. at 22-23, 32.

The court denied Appellant's petition by opinion and order. Appellant timely appealed. The court did not require her to file a statement pursuant to Pa.R.A.P. 1925(b), and none was filed. Appellant now presents three questions for our consideration:

> 1. Did the PCRA court err when it dismissed [Appellant]'s claim that her counsel was ineffective for failing to request a jury instruction for the element of locus of delivery to support the charge of [DDRD]?
>
> 2. Did the PCRA court err when it dismissed [Appellant]'s claim that her counsel was ineffective for failing to move for a mistrial in response to highly prejudicial testimony?
>
> 3. Did the PCRA court err when it dismissed [Appellant]'s claim that her counsel was ineffective for failing to preserve an issue for appellate review?

Appellant's brief at 4.[2]

We begin with the pertinent legal principles. This Court reviews the denial of a PCRA petition to determine "whether the findings of the PCRA court are supported by the record and are free from legal error." *Commonwealth v. Howard*, 285 A.3d 652, 657 (Pa.Super. 2022) (cleaned up). Ultimately, "[i]t is an appellant's burden to persuade us that the PCRA court erred and that relief is due." *Commonwealth v. Stansbury*, 219 A.3d 157, 161 (Pa.Super. 2019) (cleaned up).

---

[2] We note with displeasure that the Commonwealth did not submit a brief in this Court.

With respect to Appellant's attacks on the adequacy of trial counsel's representation, we observe that "counsel is presumed to be effective, and a petitioner must overcome that presumption to prove" her entitlement to relief. *See Commonwealth v. Simpson*, 112 A.3d 1194, 1197 (Pa. 2015). In that regard:

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa.Super. 2019) (cleaned up). The petitioner's failure to sustain any prong of the test defeats the claim. *See*, *e.g.*, *Commonwealth v. Rivera*, 199 A.3d 365, 374 (Pa. 2018).

Counsel cannot be found to be ineffective "for failing to raise a meritless claim." *Commonwealth v. Johnson*, 139 A.3d 1257, 1272 (Pa. 2016) (cleaned up). In determining whether counsel's performance lacked a reasonable basis, "the question is not whether there were other courses of action that counsel could have taken, but whether counsel's decision had any basis reasonably designed to effectuate his client's interest." *Commonwealth v. Williams*, 141 A.3d 440, 463 (Pa. 2016) (citations

- 6 -

omitted). As to prejudice, the degree of reasonable probability "is a probability sufficient to undermine confidence in the outcome." *Johnson*, 139 A.3d at 1284 (cleaned up).

Appellant first contends that counsel was ineffective for failing to request a jury instruction for DDRD that the Commonwealth bore the burden to prove that she exchanged drugs with the victim within Pennsylvania. *See* Appellant's brief at 19-30. As to jury instructions, "a charge will be found adequate unless the issues are not made clear, the jury was misled by the instructions, or there was an omission from the charge amounting to a fundamental error." *Commonwealth v. Bradley*, 232 A.3d 747, 759 (Pa.Super. 2020) (cleaned up). This Court has also repeatedly stated that "[w]here the trial court's instructions track the Pennsylvania Suggested Standard Criminal Jury Instructions, it is presumed such instructions are an accurate statement of the law." *Commonwealth v. Akhmedov*, 216 A.3d 307, 321 (Pa.Super. 2019).

A defendant commits the offense of DDRD where "(1) [s]he intentionally administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance or counterfeit controlled substance; (2) such act violates [§] 13(a)(14) or (30) of the Drug Act; and (3) another person dies as a result of using the substance." *Commonwealth v. Scott*, 325 A.3d 844, 850 (Pa.Super. 2024) (cleaned up). Our High Court has further explained that the Commonwealth must prove that the drug exchange leading to the victim's

- 7 -

death occurred within Pennsylvania. *See Commonwealth v. Peck*, 242 A.3d 1274, 1281 (Pa. 2020).

Appellant avers that she demonstrated "a reasonable probability of a different result if her counsel had requested the necessary instruction." Appellant's brief at 21-22. She contends that "[a]lthough there was evidence that the Jones couple had received their drugs from [Appellant] in the past in Washington [County], there was really no explanation where the drugs that killed [the victim] were delivered." *Id*. at 26. Appellant maintains that she had no duty to "produce affirmative evidence that the delivery occurred elsewhere, because the Commonwealth has the burden of proof to produce evidence, not [Appellant]." *Id*. at 23. She states that the evidence of the locus of delivery was merely predicated on "conjecture or speculation," and had Attorney Adams requested a proper instruction as to this element of the offense, it could have led the jury to question "the tenuous evidence presented, and [it would have been] entitled to conclude that the evidence of this element was insufficient." *Id*. at 26.

The PCRA court determined that "there is no reasonable probability that the outcome of the proceedings would be different if a jury instruction regarding the locus of delivery was given." PCRA Court Opinion, 8/4/25, at 4. The court explained that "[t]here was zero evidence in the record that the victim or her husband left the Commonwealth in the days preceding the overdose and [Appellant] does not allege that any evidence of extra-

jurisdictional travel exists." ***Id***. All drug purchases from Appellant, the court stated, occurred within Washington County, and the packaging found in the victim's purse at the time of her death matched that of Appellant's packaging. ***Id***. at 4-5.

The record supports the PCRA court's findings, and we agree that Appellant fell short of her burden to establish prejudice from counsel's failure to request an instruction regarding the location of the fatal drug delivery. Initially, we observe that the court recited the inherently accurate standard instruction for DDRD. ***See*** Pa.SSJI § 15.2506 (2024); N.T. Jury Trial Vol. II, 7/20/20, at 125-26. Although the standard instruction does not clearly state that the prosecution must establish that the drug exchange took place within the Commonwealth, Appellant failed to prove that the outcome of the case would have been different had counsel requested such an instruction. The testimony bore out that the victim and her husband regularly obtained drugs only from Appellant at her residence in Washington County between February 2019 and April 2019, including two days before the overdose. There was no indication that Ms. Jones obtained drugs from Appellant anywhere else than within the Commonwealth. Therefore, there is no reasonable probability that but for Attorney Adams's failure to request a jury instruction on this element, Appellant would have been found not guilty of DDRD. ***Accord Commonwealth v. Martin***, 336 A.3d 956, 2025 WL 720098 (Pa.Super. 2025) (non-precedential decision) (holding the PCRA court properly rejected

a **Peck**-charge ineffectiveness claim because, absent any suggestion that the victim left Pennsylvania, the jury would have reached the same result had it been so instructed).

Appellant next attacks the efficacy of counsel on the basis that he neglected to move for a mistrial when Trooper Rousseau testified that he was familiar with Appellant. **See** Appellant's brief at 30-38. Appellant likens this case to **Commonwealth v. Groce**, 303 A.2d 917 (Pa. 1973), in which a police officer stated at trial that he recognized the defendant's name from his police files and having heard it throughout his years of service in law enforcement. The High Court determined that the evidence was unduly prejudicial because it led to the "obvious" conclusion that the defendant had engaged in prior criminal activity. **Id**. at 920.

Later, however, the Court distinguished **Groce** in **Commonwealth v. Robinson**, 864 A.2d 460 (Pa. 2004). There, the appellant argued that he was prejudiced where a lieutenant of the Allentown Police Department Youth Division testified that he was familiar with the appellant, knew what school he attended, and where he resided, "because it would allow the jury to infer that [the a]ppellant had engaged in prior criminal activity as a juvenile." **Id**. at 505. The Court rejected this argument, reasoning that unlike the officer in **Groce** who claimed that he was familiar with the defendant based on his prior police work, the lieutenant's "mere reference to [his] employment in conjunction with his familiarity with [the] appellant did not convey to the jury

that [the] appellant had a prior criminal record[.]" ***Id***. (cleaned up). Rather, "such an inference, while certainly **possible**, was most certainly not conveyed to the jury by the mere mention" of "the witness'[s] employment in conjunction with his familiarity with [the a]ppellant[.]" ***Id***. (cleaned up, emphasis in original).

Appellant laments Attorney Adams's failure to request a mistrial when Trooper Rousseau testified, "without further explanation, that he was familiar with [Appellant], her address, and her phone number." Appellant's brief at 30. Without context as to why Appellant was known to Trooper Rosseau, she claims that "it is possible that some jurors would be inclined to speculate that he was familiar with [Appellant] through his work as a law enforcement officer." ***Id***. at 32. She asserts that since Trooper Rousseau "gave no reason for his familiarity with [Appellant,] . . . the jury could reasonably infer from his familiarity and occupation alone that [Appellant] had engaged in prior criminal activity or was under investigation before." ***Id***. at 34.

The PCRA court determined that "there [wa]s no express or reasonable implication as to the fact of a prior criminal offense or record in Trooper Rousseau's testimony." PCRA Court Opinion, 8/4/25, at 6. It explained that there are several ways in which Trooper Rousseau could have known Appellant, including being a witness or victim in a different matter. ***Id***. The court therefore concluded that this contention lacked arguable merit. ***Id***.

The record supports the court's determination that Appellant's position lacks any basis in law or fact. Unlike the officer in *Groce*, Trooper Rousseau did not indicate that he knew Appellant based upon any prior criminal activity or police work. Instead, like the lieutenant in *Robinson*, Trooper Rousseau merely mentioned his occupation and his familiarity with Appellant within the context of the investigation for this case, which did not amount to an implication that she had a criminal record. Rather, "such an inference, while certainly possible, was most certainly not conveyed to the jury." *Robinson*, 864 A.2d at 505 (cleaned up, emphasis omitted). Accordingly, Appellant has failed to prove that Attorney Adams was ineffective for failing to lodge a meritless objection.

In her final assertion, Appellant avers that trial counsel provided ineffective assistance for neglecting to preserve an issue for appellate review. As mentioned, this Court determined that Appellant waived her claim concerning an *Allen* charge. *See Speer*, 2024 WL 48293. Now, Appellant contends that trial counsel not only should have objected to the court's refusal to issue such an instruction to preserve it for appellate review, but alternatively should have requested an instruction pursuant to *Commonwealth v. Spencer*, 275 A.2d 299 (Pa. 1971). *See* Appellant's brief at 38-42.

Relevantly, our High Court in *Spencer* adopted the guidelines issued by the American Bar Association to "avoid the evils inherent in the *Allen* charge,"

because an instruction pursuant to **Allen** suggests "that minority jurors should yield to the majority, and that the majority need not re-examine their positions in light of the minority jurors' views." **Greer**, 951 A.2d at 356, 359 (cleaned up). To remedy that concern, a **Spencer** charge provides as follows:

> (a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:
>
>> (i) that in order to return a verdict, each juror must agree thereto;
>>
>> (ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;
>>
>> (iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;
>>
>> (iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and
>>
>> (v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.
>
> (b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a).

**Id**. at 357 (cleaned up).

Appellant contends that "[c]ontrary to [Attorney] Adams's assertions, a **Spencer** charge would not have unduly coerced the jurors into reaching a rushed verdict. Instead, it would have cautioned all of them to reconsider

- 13 -

their views if they could not reach a unanimous agreement." Appellant's brief at 40. Indeed, Appellant states, "[t]hey may have even continued deliberating and reached no verdict, resulting in a hung jury, if encouraged to engage in further debate and deliberation." *Id*. Additionally, she asserts that even if Attorney Adams believed that a *Spencer* charge was not in Appellant's best interest at trial, he "could have at least objected to preserve it" for appellate review. *Id*. at 41.

The PCRA court concluded that Appellant failed to meet her burden to demonstrate that Attorney Adams had no reasonable basis in declining to request an *Allen* or *Spencer* charge. It subscribed to trial counsel's explanation at the PCRA hearing that "typically the defense in a case does not want a *Spencer*/*Allen* charge because there is concern about pushing a jury when a hung jury can be desirable for a defendant." PCRA Court Opinion, 8/4/25, at 7 (cleaned up). The court ultimately concluded that counsel "had a reasonable basis to not object to the lack of a *Spencer*/*Allen* charge . . . and her PCRA lacks merit on this issue." *Id*.

We agree that Appellant did not meet her burden as to this claim because Attorney Adams provided a reasonable basis not to insist on a charge pursuant to *Spencer* or *Allen*. As explained by trial counsel at the PCRA hearing, a hung jury may be more advantageous to a defendant than a jury who is instructed to continue to deliberate and may ultimately render a conviction. In fact, the jury here was unanimous except for one charge. Due

to the potential for a hung jury, we cannot conclude that Attorney Adams did not make a decision "reasonably designed to effectuate his client's interest." *Williams*, 141 A.3d at 463.

Moreover, even if Attorney Adams had objected and preserved this issue for appellate review, the outcome of this matter would have been no different. Since the jury was only ninety minutes into deliberations, the court did not believe it was appropriate to issue an *Allen* or *Spencer* instruction, but nevertheless informed the jury of its duty to continue deliberating in consideration of all the evidence. It only took a short while thereafter for the jury to convict Appellant of all charges. Thus, there is no "probability sufficient to undermine confidence in the outcome" of Appellant's trial had counsel objected to the court's refusal to issue an *Allen* or *Spencer* charge. *See Johnson*, 139 A.3d at 1284 (cleaned up).

Overall, Appellant has not demonstrated that she is entitled to PCRA relief based on the ineffectiveness of trial counsel's representation. Accordingly, we affirm the PCRA court's order dismissing her petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 4/13/2026

- 15 -